"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| DOMINIC CLESCERI and GABRIEL RODRIGUEZ, individually and on behalf of all others similarly situated, | CASE NO. CV-10-3873-JST (RZx) |
|---|---|
| Plaintiffs, | |
| vs. | **ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, SETTING FAIRNESS HEARING FOR MAY 16, 2011, AT 10:00 A.M., STAYING PLAINTIFFS' MOTION TO CERTIFY CLASS (DOC #15), AND VACATING ALL OTHER DATES** |
| BEACH CITY INVESTIGATIONS & PROTECTIVE SERVICES, INC. and KEVIN HACKIE, | |
| Defendants. | |

## I.  Introduction

On October 11, 2010, Plaintiffs in this case filed an unopposed Motion for Preliminary Approval of Settlement.  (Doc. 26.)   However, because the settlement failed to comport with the opt-in requirement for an FLSA collective action, the Court denied Plaintiffs' motion without prejudice on November 10, 2010.  (Doc. 32.)  The parties have redrafted the settlement agreement to remedy the problems noted by the Court, and on December 6, 2010, Plaintiffs refiled their Motion and accompanying papers.  (Docs. 33-36.)  In this Motion, Plaintiffs pose five requests to the Court: (1) A request for conditional certification of the settlement class and FLSA collective action; (2) A request for preliminary approval of the settlement agreement; (3) A request for approval of the form and method of class notice; (4) A request for appointment of a claims administrator; and (5) A request for appointment of class counsel.  (Pls.' Mot. (Doc. 34) at 1.)  Having reviewed the papers and heard oral argument, the Court GRANTS Plaintiffs' Motion for Preliminary Approval of the Settlement and sets a fairness hearing for May 16, 2011, at 10:00 a.m.

## II. Factual and Procedural Background

### A.  The Litigation

Security guards Dominic Clesceri and Gabriel Rodriguez (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, filed this class-action complaint on April 8, 2010, against their employer, Defendant Beach City Investigations & Protective Services, Inc. and Kevin Hackie (collectively "Defendants"), alleging that Defendants violated various provisions of California law as well as the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*  Plaintiffs claim that they, and the other members of the class, served as security guards for Defendant Beach at AT&T stores in

Los Angeles, CA.  Plaintiffs allege that due to Defendants' violations, the members of the class were denied (1) overtime compensation in accordance with California Labor Code §§ 510, 1194, and 1198; (2) the remainder of their wages due, upon being discharged or quitting, in accordance with California Labor Code §§ 201 and 202; (3) adequate rest periods and/or meal breaks in accordance with California Labor Code §§ 226.7 and 512 and the applicable Wage Order; and (4) overtime compensation in accordance with the provisions of the FLSA, 29 U.S.C. §§ 201 *et seq*.

On May 21, 2010, Defendants removed the case to federal court.  (Doc. 1.)  On August 19, 2010, Plaintiffs filed a Motion to Certify the Class under Rule 23.  (Doc. 15.)  On September 3, 2010, the Court granted the parties' Stipulation to Continue the Class Certification to a later date, in order to allow the parties to mediate the case prior to the Court's hearing on Plaintiffs' Motion to Certify the Class.  (Docs. 21, 22.)  As a result of the mediation, the parties drafted the Proposed Settlement Agreement to resolve all of the allegations of the Complaint.

B.  The Proposed Settlement Agreement

Parties have agreed that Defendants will pay a total amount of $100,000 ("Settlement Amount"), which shall be non-reversionary. (Proposed Class-Action Settlement Agreement ("Proposed Settlement") (Doc. 35-1) ¶ 1.)  The allocation of the Settlement Amount shall be made "in the following order: (1) costs of claims administration, (2) attorneys' fees and costs, as awarded by the Court, (3) enhancement payments to the named Plaintiffs, as awarded by the Court, and (4) Net Settlement Fund to be automatically distributed to all Settlement Class Members who do not file a request for exclusion in equal amounts."[1]  (Pls.' Mot. at 7.)

---

[1] The Court notes that part (4) is likely an oversight in the revision of this document, as the other documents, including the Proposed Settlement, make it clear that the Net Settlement Fund is
(footnote continued)

The Proposed Settlement estimates the settlement administrative expenses to be approximately $10,000.  (Proposed Settlement ¶ 5.)  It guarantees that Plaintiffs will not ask the Court to award any more than $5,000 to cover litigation expenses and costs.  (*Id.*)  It guarantees that Plaintiffs will not ask the Court to award more than 30% of the Settlement Amount in attorneys' fees.  (*Id.*)  It provides for a payment in the amount of up to $3,000 to each of the named Plaintiffs, Clesceri and Rodriguez, as Class Representative incentive awards.  (*Id.*)  And it states that the remaining money will be distributed to all class members who submit a Claim Form, on a *pro rata* basis.  (*Id.*)  A Claims Administrator will be responsible for the distribution of the funds. (*Id.*)

Finally, the parties set forth a hybrid opt-in/opt-out method, in which the potential class members will receive a "Notice Packet."  (*Id.* ¶ 7.)  The Notice Packet informs potential class members about the Proposed Settlement and explains their options.  (*Id.*)  It also gives each potential class member a "Claim Form" which must be submitted in order to receive any money from the Settlement Amount.  (*Id.*)  The Claim Form also serves as the opt-in form.  (*Id.*)  Therefore, in order to receive compensation, the potential class member must opt-in to the FLSA settlement.  (*Id.*)  This is possible because all of the Rule 23 class action members are also eligible to be FLSA collective action members.

If the potential class member does not do anything (i.e. he does not fill out the Claim Form), then he will receive no money, will lose his Rule 23 class action claims, but will retain his FLSA claims.  (*Id*.)  Finally, if the potential class member mails a letter (there is no opt-out form in the Notice Packet) to the Claims Administrator choosing to opt-out of the Proposed Settlement, he will receive no money, but will retain the right to bring further lawsuits based on any of the claims settled in this matter.  (*Id.* ¶ 8.)

---

to be distributed between those class members who affirmatively opt-in to the action by filing a Claim Form.  The Parties should fix all such errors prior to the fairness hearing and the filing of the final version of the settlement agreement.

In return for the Settlement Amount, Plaintiffs agree to release their previously alleged claims against Defendants.  According to the Proposed Settlement:

> Plaintiffs and Defendants will stipulate to a judgment obligating Defendants to pay the Settlement Amount stated above, which will represent resolution of all claims against Defendants by any member of the Settlement Class that arise from, touch or concern the allegations in the Complaint including but not limited to claims for unpaid overtime, failure to provide meal or rest breaks or pay one hour's wages in lieu thereof, and all related statutory claims, including but not limited to, alleged violation of California Labor Code sections 201–203, 226.7, 510, 512, 558, 1194, 1199, 2698, and 2699, California Business and Professions Code sections 17000 and 17200 et seq., Wage Order No. 4-2001 issued by the Industrial Welfare Commission, the Fair Labor Standards Act ("FLSA"), Civil Code sections 52 and 52.1, and all claims for attorneys' fees and costs; provided, however, that members of the Settlement Class who do not submit Claim Forms that include consents to become party-plaintiffs under 29 U.S.C. § 216(b) will not be releasing their claims under FLSA.  These releases shall run through the date the Court grants preliminary approval of this Agreement.[2]

---

[2] The Court notes that there appears to be another error, in that California Labor Code section 266 is not included, despite the fact that it is alleged in the Complaint.

1  (Proposed Settlement ¶ 4.)  Under the Proposed Settlement, Settlement Class Members

2  who do not opt out of the Proposed Settlement will be given an opportunity to object to the

3  Proposed Settlement. (*Id.*)

4

5  **III.      Request for Conditional Certification of the Settlement Class and an FLSA**

6  **Collection Action**

7

8          Plaintiffs seek conditional certification, under Rule 23, of a class of Beach City

9  Investigations & Protective Services, Inc. security personnel, including employees and

10  independent contractors, at AT&T stores in California from January 1, 2010 to the date of

11  preliminary approval, based on Defendants' labor violations under the California Labor

12  Code and the California Business and Professions Code. (First Am. Compl. (Doc. 8))

13  Plaintiffs also seek certification under the FLSA of a collective action that includes the

14  same members as those in the Rule 23 class action, based on Defendants' labor violations

15  under the FLSA.[3]

16

17  _____

18      [3] Courts are split on whether a plaintiff may simultaneously bring an FLSA collective action

19  and a state law-based Rule 23 class action. *Murillo v. Pac. Gas & Elec. Co.,* 266 F.R.D. 468, 471
    (E.D. Cal. 2010).  District courts in the Ninth Circuit, however, have allowed an opt-in FLSA

20  collective action and opt-out Rule 23 class action to proceed simultaneously in the same suit.  *See,
    e.g., Wright v. Linkus Enter., Inc.,* 259 F.R.D. 469, 475 (E.D. Cal. 2009); *Ellison v. Autozone Inc.,*

21  No. C06-07522 MJJ, 2007 WL 2701923 (N.D. Cal. Sept. 13, 2007); *Baas v. Dollar Tree Stores,
    Inc.,* No. C 07-03108 JSW, 2007 WL 2462150 (N.D. Cal. Aug. 29, 2007); *Romero v. Producers*

22  *Dairy Foods, Inc.,* 235 F.R.D. 474 (E.D. Cal. 2006); *Breeden v. Benchmark Lending Grp., Inc.,*
    229 F.R.D. 623 (N.D. Cal. 2005); *Tomlinson v. Indymac Bank, F.S.B.,* 359 F. Supp. 2d 898 (C.D.

23  Cal.2005).  In *Murillo,* the court explained, "Had Congress believed that allowing a state opt-out

24  action to go forward simultaneously with an opt-in FLSA action would undermine the statute, it
    would not have expressly indicated that the FLSA does not preempt state labor laws." *Murillo,*

25  266 F.R.D. at 472.  The court concluded that allowing the hybrid action "(1) will prevent
    duplicative, wasteful and inefficient litigation ... (2) will eliminate the risk that the question of law

26  common to the class will be decided differently ... and (3) will not create any difficult case

27  management issues." *Id.* at 473.

28

A. <u>Legal Standards</u>

Collective action certification under the FLSA requires that potential class members be "similarly situated" to the class representatives.  29 U.S.C. § 216(b).  Neither the FLSA nor the Ninth Circuit has defined the term "similarly situated," however, courts have taken at least three different approaches to analyzing the issue.  *Vasquez v. Coast Valley Roofing*, 670 F. Supp. 2d 1114, 1123 (E.D. Cal. 2009).  "(1) [A] two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for spurious class actions."  *Id.* (internal quotation marks and citations omitted).  The majority of courts have used the two-tiered case-by-case approach, in which the district court first determines, based on a limited amount of evidence, whether the proposed class should be notified about the action.  *See Harris v. Vector Mktg. Corp.*, --- F. Supp. 2d ---, 2010 WL 4588967, at *4 (N.D. Cal. 2010); *Vasquez*, 670 F. Supp. 2d at 1123.  The Court then reevaluates whether the class representatives are similarly situated to the class members who have opted-in to the action, after discovery has produced sufficient information regarding the nature of the claims.  *Vasquez*, 670 F. Supp. 2d at 1123.  "Even when the parties settle, the court must make some final class certification finding before approving a collective action settlement."  *Murillo v. Pac. Gas & Elec. Co.,* 266 F.R.D. 468, 471 (E.D. Cal. 2010) (internal quotation marks and citations omitted).

"In order to approve a class action settlement, a district court must first make a finding that a class can be certified."  *Vasquez*, 670 F. Supp. 2d at 1120-21 (citing *Molski v. Gleich*, 318 F.3d 937, 943, 946-50 (9th Cir. 2003).  "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts must pay undiluted, even heightened, attention to class certification requirements."  *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003) (internal quotation marks and citations omitted).  Thus, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Id.*

Parties seeking class certification for the purpose of settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  To certify a class under Rule 23(a), a plaintiff must demonstrate: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").  Fed. R. Civ. P. 23(a).

The action must also satisfy one of the prongs of Rule 23(b).  Where, as here, the plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must demonstrate that "the questions of law or fact common to the member of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods" for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

B. <u>Requirements Under the FLSA</u>

Plaintiffs rely on their arguments for meeting the requirements under Rule 23, to argue that they have met the legal requirements under the FLSA.  The Court concludes that by meeting the slightly different, but more stringent requirements for class certification under Rule 23, Plaintiffs have carried their burden of establishing that the putative collective action members are similarly situated for purposes of preliminary approval of the proposed settlement.  "Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3)."  *Harris*, ---F. Supp. 2d---, 2010 WL 4588967, at *4.

Moreover, because notice has not yet been sent to the potential class members, Plaintiffs are unable to provide the Court with the potential evidence it might need to

evaluate whether the class members are not similarly situated due to disparate factual and employment settings of individual plaintiffs, various defenses available to the defendants, and fairness or procedural considerations.  *See Vasquez*, 670 F. Supp. 2d at 1123.  Once notice has been sent and prior to the fairness hearing, the Court expects that counsel will, as they stated at oral argument, provide further evidence such that the Court can evaluate whether the class members are similarly situated prior to making a final determination regarding the Proposed Settlement.

C.  Requirements Under Rule 23(a)

1.  *Numerosity*

Numerosity exists where "the class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), but Plaintiffs need not show that it would be impossible to join every class member.  *Haley v. Medtronic, Inc.,* 169 F.R.D. 643, 647 (C.D. Cal. 1996).  Here, Plaintiffs' counsel estimates the proposed class consists of approximately 152 persons.  (Pls.' Mot. at 3.)  There is no specific number required to satisfy the numerosity standard, but courts have previously held that joinder would be impracticable where there were significantly fewer potential plaintiffs than there are in the present case.  *See Jordan v. Cnty. of L.A.,* 669 F.2d 1311, 1319 (9th Cir. 1982) (finding numerosity for classes with thirty-nine, sixty-four, and seventy-one people), *vacated on other grounds,* 459 U.S. 810 (1982); *Gay v. Waiters' & Dairy Lunchmen's Union,* 549 F.2d 1330 (9th Cir. 1977) (finding numerosity for a class with 110 potential class members); *Leyva v. Buley*, 125 F.R.D. 512, 515 (E.D. Wash. 1989) (finding numerosity for a class of fifty-five members).  Therefore, the Court concludes that Plaintiffs have established that they meet the numerosity standard.

9

### 2. *Commonality*

Commonality exists where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  To meet this requirement, there must be "shared legal issues" or "a common core of salient facts."  *Staton*, 327 F.3d at 953.  Courts have construed this commonality requirement permissively, and the Ninth Circuit has stated that "[a]ll questions of fact and law need not be common to satisfy the rule."  *Hanlon v. Chrysler Corp.,* 150 F. 3d 1011, 1019 (9th Cir. 1998).  "Commonality is generally satisfied where, as in this case, 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'"  *Vasquez*, 670 F. Supp. 2d at 1121 (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).  A finding of commonality is not undermined by differences in the ways in which system-wide practices affect individual members of the class.  *Armstrong*, 275 F.3d at 868.

Here, Plaintiffs allege several common questions of fact and law: (1) the settlement class members all worked as security personnel; (2) the settlement class members each worked at an AT&T store location; (3) the settlement class members worked between January 1, 2010 and the date of preliminary approval of the settlement; (4) the settlement class members were not properly paid overtime under state and federal law; (5) the settlement class members did not receive proper rest breaks; (6) the settlement class members did not receive proper meal breaks; (7) the settlement class members did not receive adequate wage statements in compliance with section 226 of the California Labor Code; and (8) Defendants were "employers" who were responsible for the violations. Plaintiffs do not appear, however, to have submitted the type of evidence normally required, i.e., declarations from unnamed class members.  The Court concludes that, for purposes of preliminary approval, Plaintiffs have met the commonality requirement, but as noted above, the Court expects that further evidence in the form of declarations and affidavits will be submitted prior to the fairness hearing on this issue.

10

### 3.  Typicality

Typicality exists where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The Court does not, however, "need to find that the claims of the purported class representative[s] are identical to the claims of the other class members." *Haley,* 169 F.R.D. at 649.  The Ninth Circuit further stated that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those absent class members; they need not be substantially identical." *Hanlon,* 150 F. 3d at 1020.  In addition, the class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members." *In re Paxil Litig.,* 212 F.R.D. 539, 549 (C.D. Cal. 2003).

Here, the named plaintiffs assert that their claims are typical because, like the rest of the class members, they worked as security personnel for Defendants at AT&T store locations between January 1, 2010 and the date of preliminary approval, and they were allegedly not paid proper overtime, given proper rest and meal breaks, given adequate wage statements, or paid final wages in a timely fashion.  Similar to the commonality requirement, Plaintiffs stated at oral argument that they have not yet submitted evidence supporting these allegations, because they have yet to send out notice to the class members.  Therefore, the Court preliminarily holds that Plaintiffs satisfy the typicality requirement pending further documentation prior to the fairness hearing.

### 4.  Adequacy of Representation

Adequacy of representation exists where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Satisfying this element "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the

unlikelihood that the suit is collusive." *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847, 855 (9th Cir. 1982), *cert. denied,* 459 U.S. 1171 (1983). Thus, traditionally, courts have engaged in a two-pronged analysis to determine if the plaintiff has met the Rule 23(a)(4) requirement: "(1) the class representative must not have interests antagonistic to the unnamed class members, and (2) the representative must be able to prosecute the action 'vigorously through qualified counsel.'" *True v. Am. Honda Motor Co.,* No. EDCV 07-287-VAP (OPx), 2009 WL 838284, at *5 (C.D. Cal. Mar. 25, 2009) (citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978)).

Plaintiffs Clesceri and Rodriguez did not yet submit declarations with this Motion, stating that they understand their roles as class representatives and intend to fulfill them in good faith and that they are not aware of any conflicts of interest between themselves and the proposed class. Although there is no evidence presented by either party that the representatives of the class would have interests antagonistic to the class, the Court expects to receive such declarations prior to the fairness hearing, in addition to further declarations from other class members. *See Vasquez*, 670 F. Supp. 2d at 1122.

In addition, Plaintiffs' counsel submitted substantial evidence of their experience with class action, complex business, and labor-law litigation, including substantial trial experience. (Decl. of Alan Harris (Doc. 17) ¶ 2.) Plaintiffs' counsel have made an adequate showing of their qualifications, *see* Fed. R. Civ. P. 23(g), and they have, thus far, litigated this matter with apparent vigor. Therefore, the Court preliminarily concludes that adequacy of representation is met.

D. <u>Requirements of Rule 23(b)(3) - Predominance of Fact and Superiority of a Class Action</u>

When all four requirements are satisfied under Rule 23(a), Plaintiffs must also establish that one or more of the grounds for maintaining the suit is met under Rule 23(b). Plaintiffs move for class certification under Rule 23(b)(3), so they must demonstrate that:

1  (1) "the questions of law or fact common to class members predominate over any

2  questions affecting only individual members," and (2) "a class action is superior to other

3  available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

4  23(b)(3).

5       As was discussed with regard to the commonality requirement, Plaintiffs allege

6  several common issues of fact and law, and, at this point, those issues clearly predominate

7  over any individual issues the class members may have. Assuming this will be supported

8  by more evidence from the other class members, the Court concludes that preliminary class

9  certification for settlement purposes is proper in this case, despite the existence of "minor

10 factual differences" between the potential class members, as "the common issues

11 predominate over varying factual predicates, such as number of hours worked under the

12 allegedly unlawful workplace policies." *Wright v. Linkus Enters., Inc.,* 259 F.R.D. 469,

13 473 (E.D. Cal. 2009); *see also Murillo*, 266 F.R.D. at 476-77.

14      Courts commonly certify class actions pertaining to wage and hour issues, as

15 common questions often predominate over individual questions in this context. *See, e.g.*,

16 *Cicero v. DIRECTV, Inc.,* No. EDCV 07-1182, 2010 WL 2991486, at *4 (C.D. Cal. July

17 27, 2010). "The potential recovery of each individual Plaintiff would not justify the

18 litigation expense and risk of inconsistent judgments." *Id.* Plaintiffs further claim that a

19 class action is the superior method of litigation in this case because the alternative would

20 be "(1) dozens of separate claim proceedings before the Division of Labor Standards

21 Enforcement, followed by a similar number of *de novo* trials in Superior Court, or, as is

22 more likely, (2) the large majority of Settlement Class Members will *never* have their

23 claims determined on the merits, or (3) the direct employer, Beach, will file for

24 bankruptcy." (Pls.' Mot. at 5-6.) The Court concludes that here, a class action and

25 collective action would be superior to multiple individual lawsuits. Additionally, "class

26 certification in this case, where common issues predominate, serves the judicial economy

27 function of Rule 23 class actions." *Wright,* 259 F.R.D. at 473. Finally, there do not appear

28

1  to be any factors weighing against the superiority of a class action, particularly because

2  there is a proposed settlement between the parties.  *See Murillo*, 266 F.R.D. at 477.

4  **IV. Request for Preliminary Approval of the Proposed Settlement**

6          Judicial policy favors settlement in class actions, as substantial resources can be

7  saved by avoiding the time, cost, and rigors of formal litigation.  *In re Wash. Pub. Puower*

8  *Supply Sys. Sec. Litig.,* 720 F. Supp. 1379, 1387 (D. Ariz. 1989).  Importantly, the Court

9  must review the Proposed Settlement as a whole, as the Court cannot approve some parts

10  while denying approval to others:

12          It is the complete package taken as a whole, rather than the

13          individual component parts, that must be examined for overall

14          fairness.

15          . . . .

16          . . . [T]he district court [is not] empowered to rewrite the

17          settlement agreed upon by the parties. [It] may not delete, modify,

18          or substitute certain provisions of the consent decree. Of course,

19          the district court may suggest modifications, but ultimately, it

20          must consider the proposal as a whole and as submitted. Approval

21          must then be given or withheld.

23  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628-30 (9th Cir. 1982).

24          In order to grant preliminary approval of the Proposed Settlement, the Court must

25  determine whether the proposed settlement is "fair, reasonable, and adequate."  Fed. R.

26  Civ. P. 23(e)(2).  To make this determination, some or all of the following factors should

27  be considered: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and

28  duration of further litigation; (3) the risk of maintaining class certification throughout trial;

1   (4) the amount of settlement; (5) the extent of investigation and discovery completed; (6)

2   the experience and views of counsel; and (7) the reaction of class members to the proposed

3   settlement.  *See, e.g., In re Heritage Bond Litig.,* 546 F.3d 667, 674 (9th Cir. 2008); *Staton*,

4   327 F.3d at 959; *Hanlon,* 150 F.3d at 1027; *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1291

5   (9th Cir. 1992) (citing *Officers for Justice*, 688 F.2d at 625).  However, this is "by no

6   means an exhaustive list of relevant considerations," and "[t]he relative degree of

7   importance to be attached to any particular factor will depend upon . . . the unique facts

8   and circumstances presented by each individual case."  *Officers for Justice,* 688 F. 2d at

9   625.  Because many of these factors cannot be fully assessed until the fairness hearing, the

10  Court conducts only a cursory review so that the parties are aware of areas in which further

11  evidence will be necessary.  *See Murillo*, 266 F.R.D. at 477-78.

12

13        A.  <u>Strength of Plaintiffs' case</u>

14

15        The Court must consider "whether the decision to settle is a good value for a

16  relatively weak case or a sell-out of an extraordinarily strong case."  *Livingston v. Toyota*

17  *Motor Sales USA,* No. C-94-1377-MHP, 1995 U.S. Dist. LEXIS 21757, at *30 (N.D. Cal.

18  June 1, 1995).  Plaintiffs in this case contend that Defendants failed to provide them with

19  proper and timely overtime compensation, rest periods, meal breaks, adequate pay stubs,

20  and final wages upon discharge.  (Pls.' Mot. at 11.)  Defendants deny all of Plaintiffs'

21  allegations, and contend that all required breaks were given, that no outstanding wages are

22  due, and that Plaintiffs were independent contractors, and as such, Plaintiffs would have no

23  claims under either California law or the FLSA. (*Id.*)

24        There is little discussion regarding the specific strengths and weaknesses of

25  Plaintiffs' case, however, in these types of wage and hour cases, there are often numerous

26  issues of fact to be presented at trial.   Moreover, the time period and number of potential

27  Plaintiffs in this case is not very large, therefore, there does not appear to be a large

28  amount of money at stake.  Because there has been no formal discovery, the parties simply

1   agreed that a determination of these issues could be made in either Plaintiffs' or

2   Defendants' favor.  Rather than use what little money is recoverable on

3   litigation/discovery costs, the parties have tried to come up with the Proposed Settlement.

4   The Court expects the parties to present further evidence on this issue prior to the fairness

5   hearing.

6

7        B.  <u>Likely Expense and Duration of Further Litigation</u>

8

9        Plaintiffs assert that the action at hand has been pending for nearly half a year, and

10  that the likely duration of further litigation would be more than a year, at the least.  (Pls.'

11  Mot. at 12.)  However, if the Court approves this class-action settlement, Plaintiffs assert

12  that a settlement fund would be created immediately to remedy any violations that may

13  have occurred, closing the matter now.  (*Id.*)  Again, the Motion sets forth almost no

14  information on this issue, and again, the Court expects the parties to present further

15  evidence on this issue prior to the fairness hearing.

16

17       C.  <u>The Risk of Maintaining Class Certification</u>

18

19       The Court has not been made aware of any specific risks of maintaining class

20  certification were the case to go to trial.  Accordingly, the Court need not consider this

21  factor for settlement purposes.  *See In re Veritas Software Corp. Sec. Litig.,* No. C-03-0283

22  MMC, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (favoring neither approval nor

23  disapproval of settlement where the court was "unaware of any risk involved in

24  maintaining class action status"), *aff'd in relevant part*, 496 F.3d 962 (9th Cir. 2007);

25  *Murillo v. Pac. Gas & Elec. Co.,* No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at

26  *7 (E.D. Cal. July 21, 2010) (favoring neither approval not disapproval of settlement

27  where the court was "unaware of any specific difficulty in maintaining class-action status

28  were [the] case to continue to trial").

16

D. <u>The Amount Offered in Settlement</u>

The amount offered in settlement is $100,000.  (Pls.' Mot. at 12.)  Class counsel indicates that this will yield an average recovery of approximately $657 for each class member.  (*Id.*)  This average recovery  amount does not take into account attorney's fees and costs, incentive awards to named Plaintiffs, and administration fees and costs. Although the amount offered in settlement is not the amount Plaintiffs hoped to achieve at trial, both parties agree that it represents a compromise, "in light of the risks and costs of further litigation."  (*Id.*)  Plaintiffs further submit that the settlement amount is reasonable in this case, in light of Defendants' defenses and financial conditions.  (Decl. of Alan Harris ¶ 5.)

E. <u>Plaintiffs' Incentive Awards</u>

"The Court must conduct an individualized analysis of these proposed payments, in order to detect 'excessive payments to named class members' that may indicate 'the agreement was reached through fraud or collusion.'"  *Carter v. Anderson Merch., LP,* Nos. EDCV 08-0025-VAP (OPx), EDCV 09-0216-VAP (OPx), 2010 WL 1946784 at *10 (C.D. Cal. May 11, 2010) (citing *Staton,* 327 F.3d at 977).  Here, the Proposed Settlement proposes a maximum of $6,000 in incentive awards, if each of the two named plaintiffs receives $3,000.

F. <u>The Extent of Investigation Discovery Completed</u>

In the present matter, only informal discovery has been conducted, but, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed

decision about settlement." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.,* 669 F.2d 228, 241 (5th Cir. 1982)). Plaintiffs assert that the parties have "conducted significant informal discovery," in reviewing "hundreds of pages of documents" and conducting "numerous informal interviews regarding the background of the case." (Pls.' Mot. at 12-13; Decl. of Alan Harris ¶ 10.)

G.  Experience and Views of Counsel

Plaintiffs' counsel submitted a detailed declaration demonstrating his and his co-counsel's extensive experience with class action, complex business, and labor-law litigation, including substantial trial experience. (Decl. of Alan Harris ¶ 2.) Plaintiffs' counsel stated in his declaration that he believes the settlement is "fair, reasonable, and equitable." (*Id.* ¶ 5.) Counsel for Defendants has also filed its non-opposition to Plaintiffs' motion for approval of settlement, showing its support of the settlement. Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 720 F. Supp. at 1392 ("Counsel's opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions.").

H.  Reaction of Class Members to the Proposed Settlement

Plaintiffs provide no evidence regarding class members' reaction to the proposed settlement, stating that "[t]he reaction of Class Members to the proposed settlement cannot be known until preliminary approval is given, notice is sent out, and responses to that notice are received." (Pls.' Mot. at 13.) Therefore, the Court expects to see further

evidence regarding the reaction of class members, before final approval of the settlement is granted.

      I.   <u>Collusiveness of the Proposed Settlement</u>

The parties engaged in negotiations, including an all-day mediation on September 29, 2010, with mediator Steven J. Rottman, after which the parties reached the Proposed Settlement before the Court.  (Decl. of Alan Harris ¶ 4.)  "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Carter*, 2010 WL 1946784 at *3 (citing *Satchell v. Fed. Express Corp.,* Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

The Court noted at oral argument that, although Plaintiffs' counsel indicated that they would ask for up to 30% of the Settlement Amount in attorneys' fees, the Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." *Hanlon*, 150 F.3d at 1029.  Therefore, the Court preliminarily concludes that it will not only award no more than 25% of the common fund in attorneys' fees, but that it will also only grant final approval to the Proposed Settlement if the request for attorneys' fees is reasonable and proportionate to the work performed.  *See Murillo*, 266 F.R.D. at 480.

**V. Request for Approval of the Form and Method of Class Notice**

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  However, actual notice is not required. *See Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994).

Notice by mail has been found by the Supreme Court to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The Proposed Settlement states that:

> Within ten business days from the preliminary approval of the Settlement, Defendants will provide to the Claims Administrator a list of Class Members and their last known addresses. The Claims Administrator will then send a Class Notice to each Class Member via first-class mail using the most current mailing-address information available, within fourteen days of receipt of the class list from Defendants. If the mailing to the Class Members is returned as undeliverable, the Claims Administrator shall perform any other appropriate skip trace or other appropriate steps to identify a proper address for that Settlement Class Member. The Claims Administrator shall then re-mail the Class Notice and related documents to the updated address.

(Pls.' Mot. at 10 (internal citations omitted).)

Under Rule 23, the notice must include, in a manner that is understandable to potential class members, "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). In contrast, notice under the FLSA must inform potential class members of the opt-in procedures and of the binding effect, on those who opt-in, of the judgment or settlement. *See* 29 U.S.C. § 216(b).

The proposed notice includes information about the nature of the litigation, the scope of the class involved, and claims against Defendants. (Notice to Class of Proposed

Settlement of Class Action (Doc. 35-2).)  The proposed notice clearly explains that class members must file a Claim Form in order to receive any part of the settlement, that they must send some notification to the claims administrator to opt-out of the proposed class, and that by doing nothing, they lose their Rule 23 class action claims, retain their FLSA claims, and receive no money.[4]  (*Id.*)  Therefore, the Court approves of the form and method of class/collective action notice.

## VI. Claims Administrator and Class Counsel

The parties have agreed to recommend that the Court appoint a third-party claims administrator, Gilardi & Co., LLC, who will distribute funds to the members of the settlement class who have submitted valid and timely claim forms.  (Decl. of Alan Harris ¶ 5(B).)  "Such funds deposited into the [trust account] shall be deemed in the custody of the Court to the same extent as if funds had been directly deposited with the Court."  (*Id.*)  Numerous other courts have recognized Gilardi & Co. to be an appropriate claims administrator.  *See Multi-Ethnic Immigrant Worker Org. Network v. Los Angeles*, No. CV 07-3072 AHM (FMOx), 2009 WL 1065072, at *5 (C.D. Cal. Mar. 19, 2009); *Barcia v. Contain-A-Way, Inc.,* No. 07cv938-IEG-JMA, 2009 WL 3061984, at *1 (S.D. Cal. Sept. 23, 2009).  Therefore, the Court agrees to the appointment of the recommended claims administrator.

Plaintiffs' counsel has also requested that the court appoint them class counsel in this matter.  Considering Plaintiffs' counsel's vast experience in the relevant areas of law, as discussed above, and their advocacy in this case since the beginning, the Court appoints Plaintiffs' counsel as class counsel in this matter.

---

[4] The Court notes that the addresses and telephone number of the Claims Administrator appear to be missing from the proposed notice.  The Court assumes that the parties will fill in the missing information prior to sending out notice to the class members.

## VII.   Conclusion

Based on the foregoing analysis, the Court holds as follows:

1.  The Court conditionally certifies the Rule 23 class and the FLSA collective action for settlement as follows: All Beach City Investigations & Protective Services, Inc., employees and/or independent contractors who worked as security personnel at an AT&T store location in California between January 1, 2010, and the date of preliminary approval of Settlement ("Settlement Class"). An individual who executes and returns a valid Request for Exclusion will be excluded from the Settlement Class.  Only those individuals who return Claim Forms will be included within the FLSA collective action.

2.  The Court preliminarily approves the Proposed Settlement.

3.  The Court approves the form and method of class notice.

4.  The Court appoints the claims administrator jointly selected by the parties, Gilardi & Co., LLC.  The Court directs the mailing of the Class Notice and Claim Form by first-class mail to the Settlement Class in accordance with the schedule and procedures set forth in the Motion.  The Court finds that the dates and method selected for the mailing and distribution of the Class Notice and Claim Form, as set forth in the Motion, meet the requirements of due process and provide the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

5.  The Court appoints Alan Harris and Abigail Treanor of Harris & Ruble as class counsel in this matter.

6.  The Court confirms Dominic Clesceri and Gabriel Rodriguez as the representatives of the Settlement Class.

7.  The Court sets May 16, 2011, at 10:00 a.m. for the fairness hearing, to determine whether the Proposed Settlement should be finally approved as fair,

reasonable, and adequate to class members.  Class counsel shall file: (A) all the additional supporting documents noted by the Court above and (B) brief(s) requesting final approval of the Proposed Settlement, an award of reasonable attorneys' fees and costs, and an award of reasonable class representative enhancement fees to the representatives of the Settlement Class, not later than 28 days before the fairness hearing.  The Court expects that class counsel will address all of the issues noted by the Court both in this Order and at oral argument in these written submissions.  Settlement Class Members wishing to be heard at the fairness hearing are required to file written comments or objections no later than 21 days before the fairness hearing.  Settlement Class Members should indicate in their writings their intention to appear at the hearing.  Any Settlement Class Member may appear at the fairness hearing in person or by his or her own attorney, however, Settlement Class Members need not appear at the fairness hearing to indicate their approval of the Proposed Settlement.  Class counsel may file written replies to any of the Settlement Class Members' written responses, no later than 14 days before the fairness hearing.  All other dates shall be as established by the Settlement.

8.  The Court stays Plaintiffs' Motion to Certify Class (Doc. 15), vacates the hearing set for January 31, 2011, at 10:00 a.m., and vacates all other dates previously set by the Court.

9.  The Court reserves the right to continue the date of the fairness hearing without further notice to Settlement Class Members.  The Court retains jurisdiction to consider all further applications arising out of or in connection with the Proposed Settlement.

DATED: January 27, 2011                **JOSEPHINE STATON TUCKER**

                                       UNITED STATES DISTRICT JUDGE